UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

City of Lincoln,

Plaintiff,

v.

County of Placer,

Defendant.

No. 2:18-cv-00087-KJM-AC

ORDER

This matter is before the court on defendant and cross-claimant County of Placer's motion for judgment on the pleadings with respect to plaintiff City of Lincoln's equitable indemnity, contribution, and Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) section 113 claims. *See generally* Mot., ECF No. 46; Mem., ECF No. 46-1. The City opposes. *See* Opp'n, ECF No. 47. The County replied. Reply, ECF No. 48. The court heard argument on May 27, 2022, with Jeffrey Orrell appearing for plaintiffs and Jennifer Hartman King appearing for defendants. For the reasons below, **the court grants the County's motion.**

## I. BACKGROUND

Since 1952, the City of Lincoln has owned, operated, and maintained a landfill in Placer County, California. Compl. ¶ 10, ECF No. 1. The landfill was open to residents and private and public entities, including defendant Placer County, until approximately 1976. *Id.* ¶¶ 10, 12. On

"information and belief," the City alleges the County generated, transported, and arranged for the disposal of hazardous waste at the landfill. *Id.* ¶¶ 11–12.

In mid-2014, the California Regional Water Quality Control Board, Central Valley Region (Regional Board) issued a Cleanup and Abatement Order, which required the City to "investigate, reduce, or eliminate groundwater, soil, surface water and air contamination at the Site and in near proximity to the Site." *Id.* ¶ 13. Since receiving the order, the "City has incurred and continues to incur costs to investigate, remediate, and take additional actions to prevent further spreading of contamination of groundwater, soil, surface water and air at the Site, and in near proximity of the Site, and otherwise carry out the requirements of [the Abatement Order]." *Id.* ¶ 14. The City anticipates incurring additional costs in the future. *Id.*

In early 2018, the City filed the operative complaint against the County, alleging six claims: (1) continuing nuisance, (2) continuing trespass, (3) equitable indemnity/contribution, (4) cost recovery under CERCLA section 107, (5) contribution under CERCLA section 113, and (6) declaratory relief. *See generally* Compl. The County filed an answer and a counterclaim for contribution under CERCLA section 113. Answer at 13, ECF No. 10. Relying on Federal Rule of Civil Procedure 12(c), the County now moves for judgment on the pleadings as to the City's third and fifth claims for equitable indemnity/contribution and contribution under CERCLA section 113. Mem. at 2.[1]

## II. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) claim, thus the same standard of review applies. *Gregg v. Hawaii, Department of Public Safety*, 870 F.3d 883, 887 (9th Cir. 2017); *Baiul v. NBC Sports, a division of NBCUniversal Media, LLC*, 732 Fed. App'x 529, 531 (9th Cir. 2018) (unpublished) (affirming district court's dismissal of plaintiff's claims based on res judicata because Rule 12(b)(6) and Rule 12(c) motions have same standard of review). A plaintiff must support each claim for relief with

[1] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

factual allegations that allow the court to draw a plausible inference of a defendant's potential liability. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). When considering a Rule 12(c) motion, the court assumes all factual allegations in the pleadings are true and draws inferences in favor of the non-moving party. *Gregg*, 870 F.3d at 886–87 (quoting *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)); *see also Doutherd v. Motesdeoca*, No. 17-02225, 2021 WL 1784917, at *3 (E.D. Cal. May 5, 2021).

## III. ANALYSIS

### A. Equitable Indemnity

"The right to equitable indemnity arises from the principle that an individual who has paid damages which ought to have been paid by another wrongdoer may recover from that wrongdoer." *Sullins v. Exxon/Mobil Corp.*, 729 F. Supp. 2d 1129, 1139 (N.D. Cal. 2010) (citing *Bush v. Sup. Ct.*, 10 Cal. App. 4th 1374, 1380 (1992)). "It is premised on the doctrine that joint tortfeasors should share the burden of discharging their legal obligation to the injured party for damages caused by mutual negligence or wrongdoing." *Id.* (citing *Miller v. Ellis*, 103 Cal. App. 4th 373, 379–80 (2002)). An equitable indemnity cause of action accrues "when the indemnitee suffers a loss through payment of an adverse judgment or settlement." *Id.* (citing *Western Steamship Lines, Inc. v. San Pedro Peninsula Hosp.*, 8 Cal. 4th 100, 110 (1994)); *see also Christian v. County of Los Angeles*, 176 Cal. App. 3d 466, 471 (1986) ("[A] fundamental prerequisite to an action for partial or total equitable indemnity is an actual monetary loss through payment of a judgment or settlement.").

The County argues the City's claim for equitable indemnity fails as a matter of law, "as the City has not incurred damages for payment to any third party in settlement of a claim or in satisfaction of a judgment . . . ." Mem. at 7 (citing *City of San Diego v. U.S. Gypsum Co.*, 30 Cal. App. 4th 575, 587–88 (1995); *Valley Circle Ests. v. VTN Consol., Inc.*, 33 Cal. 3d 604, 611 (1983)). The City points to caselaw suggesting a party may pursue a claim for equitable indemnity prior to accrual, i.e., the establishment of liability. Opp'n at 10 (citing *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1037, 1041–42 (E.D. Cal. 2013) ("equitable indemnity claims may be pled in a cross-complaint before any defendant has been found liable"); *A&I*

*Transp. Inc. v. KG Admin. Servs., Inc.*, No. 19-01992, 2021 WL 1152973, at *4 (C.D. Cal. Jan. 7, 2021) (third-party complaint for equitable indemnity not foreclosed "in a pending lawsuit that may result in comparative tort liability"). The City's reliance on this caselaw is misplaced. Rather, the cases the City cites involve cross-complaints and third-party complaints for equitable indemnity, rendering them distinguishable from the facts here. Reply at 3–4.

The City does not cite a case in which the court considered whether—and then concluded—a plaintiff may state a claim against a defendant for equitable indemnity prior to incurring damages for payment in a settlement or satisfaction of judgment. At hearing, the City's counsel suggested the case of *Mangini v. Aerojet-General Corp*., 230 Cal. App. 3d 1125, 1153–54 (1991), stands for the proposition that equitable indemnity is available absent damages for payment in a settlement or satisfaction of judgment, so long as plaintiff has incurred "testing and abatement costs" or "suffered loss through payment." However, the defendant in *Mangini* only challenged plaintiffs' equitable indemnity claim as barred by the statute of limitations, and thus the court did not analyze the precise contours of the question presented here. Furthermore, the three Supreme Court of California cases the *Mangini* court cites all discuss payments made following adverse judgments or settlement—not just any loss through payment. *See Valley Circle Ests.*, 33 Cal. 3d at 611; *People ex rel. Dep't of Transp. v. Superior Ct.*, 26 Cal. 3d 744, 748 (1980); *E. L. White, Inc. v. City of Huntington Beach*, 21 Cal. 3d 497, 505 (1978). The City's reliance on *City of Rialto v. U.S. Department of Defense* is similarly unavailing because in that case the court relied upon *Mangini* in finding plaintiffs did not state a claim for equitable indemnity because they had "not pled that they are defendants in related litigation or that they ha[d] incurred damages in required payments to third parties," No. 4-00079, 2005 WL 5519062, at *10 (C.D. Cal. Aug. 16, 2005), *aff'd in part sub nom. City of Rialto v. U.S. Dep't of Def.*, 274 F. App'x 515 (9th Cir. 2008).

This raises the City's second, related argument, that the costs incurred to comply with the Regional Board's Order and avoid a lawsuit is a "form of settlement," and the Order is a "'claim' that entitles the City to seek equitable indemnity." Opp'n at 11–12. Here, the court finds the case of *Tesoro Refining & Marketing Co. v. City of Long Beach*, 334 F. Supp. 3d 1031 (C.D. Cal.

2017) instructive, as explained below. The court notes that shortly before hearing, the City filed a Request for Judicial Notice, which responded in part to new caselaw and arguments presented in the County's Reply, including the County's citation to *Tesoro*. The Request also references and attaches four state agency letters and orders interpreting the California Water Code, as well as a minute order from a case filed in San Diego Superior Court. The court **grants the request** and considers the material it covers. *See* Fed. R. Evid. 201(b)(2); *United States ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) (a court "can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies") (internal quotations and citations omitted).

In *Tesoro*, the district court considered plaintiffs' equitable indemnity claim, which was based on payments plaintiffs were required to make to comply with the Los Angeles Regional Water Quality Control Board's Order issumake based on the California Water Code. 334 F. Supp. 3d at 1040, 1049. The court dismissed plaintiffs' equitable indemnity claim because plaintiffs alleged "no loss through the payment of an adverse judgment or settlement." *Id.* at 1049. The City cites no caselaw indicating courts have found a party entitled to equitable indemnity for costs the party incurred to avoid a potential lawsuit. *See generally* Opp'n. At hearing, the City suggested *Tesoro* is not persuasive because it addresses an equitable contribution under section 1432 of the California Civil Procedure Code. However, the court in *Tesoro* separately addressed plaintiffs' equitable indemnity claim, in addition to considering the contribution claim. *See Tesoro*, 334 F. Supp. 3d at 1049.

For the reasons explained above, the court grants the County's motion for judgment on the pleadings as to the City's equitable indemnity claim, with leave to amend if possible within the confines of Rule 11. *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000) ("[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

**B. Contribution**

"A claim for equitable contribution arises '[w]here two or more parties are jointly liable on an obligation and one of them makes payments of more than its share.'" *Tesoro*, 334 F. Supp. 3d at 1048 (quoting *Sullins*, 729 F. Supp. 2d at 1138). "The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by co-obligors and to prevent one obligor from benefitting at the expense of the others." *Id.* "A threshold requirement for a contribution claim, however, is that 'the parties be connected by a joint obligation.'" *Id*. For example, if multiple parties are named in a cleanup order, this would give rise to one party's viable contribution claim against others named in the order. *See Sullins*, 729 F. Supp. 2d at 1139.

To state a claim for equitable contribution, the City must at least allege that the County is jointly and severally liable for the costs incurred in complying with the Order. It has not done so. *See* Compl. ¶¶ 30–34. The City only raises joint and several liability in its fourth claim for Response Cost Recovery under CERCLA. *See id.* ¶ 40. The court grants the County's motion for judgment on the pleadings in this equitable contribution claim, with leave to amend. If the City chooses to amend, it should plead its contribution and equitable indemnity claims separately.

**C. Contribution under CERCLA Section 113**

"CERCLA provides two mechanisms for private parties to recover their environmental cleanup expenses from other parties." *Whittaker Corp. v. United States* (*Whittaker II*), 825 F.3d 1002, 1006 (9th Cir. 2016). "Section 113(f)(1) authorizes a contribution action to [potentially responsible parties] with common liability stemming from an action instituted under . . . § 107(a)." *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 129 (2007).[2] In *Cooper Industries,*

[2] Section 113(f)(1) provides:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among

*Inc. v. Aviall Services, Inc.*, the Supreme Court held that contribution under CERCLA section 113(f)(1) "may only be sought subject to the specified conditions, namely, 'during or following' a specified civil action." 543 U.S. 157, 165–66 (2004). These actions are limited to civil actions brought under CERCLA sections 106 or 107(a). *Id.*

The parties first disagree as to whether the Regional Board's Order constitutes a civil action under section 106. The City cites cases holding that unilateral administrative orders (UAO) from the United States Environmental Protection Agency (EPA) issued under CERCLA section 106(a) constitute civil actions under section 106. *See* Opp'n at 19 (citing *Carrier Corp. v. Piper*, 460 F. Supp. 2d 827, 831 (W.D. Tenn. 2006); *PCS Nitrogen, Inc. v. Ross Dev. Corp.*, 104 F. Supp. 3d 729, 742 (D.S.C. 2015); *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 351–52 (6th Cir. 1998)). The County observes both *PCS Nitrogen* and *Carrier Corp.* rely on the Sixth Circuit's decision in *Centerior*, which at least one court has questioned in light of later Supreme Court decisions. *See Hobart Corp. v. Dayton Power & Light Co.*, 336 F. Supp. 3d 888, 895 (S.D. Ohio 2018). The court acknowledges this argument but still considers the cases persuasive authority. These opinions reason that "in terms of the burden it places on a party, a UAO is similar to a judgment issued pursuant to a court proceeding." *PCS Nitrogen, Inc*, 104 F. Supp. 3d at 742 (quoting *Carrier Corp.*, 460 F. Supp. 2d at 841). The *PCS* court explained:

> The UAO imposes significant fines for noncompliance—up to $37,500 per violation per day—and subjects a breaching party to punitive damages in some circumstances. . . . The UAO also provides for continued EPA oversight of the remediation process. . . . There are unquestionable similarities between the effect of the UAO and that of a civil action in terms of coercing a party to undertake remedial actions.

*Id.* at 742. The court thus concluded that a UAO issued under section 106(a) qualifies as a civil action under section 106 or section 107 of CERCLA. *Id.* The California Regional Water Quality Control Board's Abatement Order at issue here provides that failure to comply "may" result in

---

> liable parties using such equitable factors as the court determines are appropriate. . . .

referral of the "matter to the Attorney General for judicial enforcement or [ ] a complaint for administrative civil liability." *See* King Decl. Ex. C at 52, ECF No. 46-2. It also notes that failure to comply with the order "may result in the assessment of administrative civil liability up to $10,000 per violation per day, pursuant to [sections of the Water Code]." *Id.*

Notwithstanding the potential burden imposed by the Board's Order, at least one court in this circuit, after robust analysis, has concluded that UAOs "lack the scope and finality of a 'civil action'" and thus "a § 113(f)(1) claim is prohibited absent a lawsuit or settlement under §§ 106 or 107." *Diamond X Ranch LLC v. Atl. Richfield Co.*, No. 13-00570, 2016 WL 4498211, at *5–6 (D. Nev. Aug. 26, 2016) (observing "the majority of courts have held that UAOs under § 106(a) do not constitute a 'civil action' for the purposes of § 113(f)(1)" and citing cases). The County also points to caselaw indicating courts agree state-issued cleanup orders are insufficient, and that federal administrative orders are required under section 113(f)(1) and section 106. *See* Mem. at 11 (citing *Cadlerock Properties Joint Venture, L.P. v. Schilberg*, No. 1-896, 2005 WL 1683494, at *6 (D. Conn. July 19, 2005) (state's cleanup order is "not remotely the same as an EPA-issued administrative order under CERCLA § 106"); *Town of Oyster Bay v. Northrop Grumman Corp.*, No. 05-1945, 2006 U.S. Dist. LEXIS 114560, at *16 (E.D.N.Y. May 2, 2006) (same); *Interfaith Cmty. Org. v. AlliedSignal, Inc.*, 928 F. Supp. 1339, 1347 (D.N.J. 1996) ("Nothing in the language of section 106 of CERCLA or in interpretative caselaw indicates State administrative actions should be deemed equivalent to section 106 of CERCLA."). The court finds the County's arguments and supporting caselaw persuasive.

Having concluded the Abatement Order in the present case does not function as a "civil order" for the purposes of section 106, the court turns to the City's second argument regarding its CERCLA section 113 contribution claim. The City argues it can use a section 113(f) counterclaim filed by the United States in a separate action to compel the County to contribute to the City's liability to the United States. Opp'n at 20 (citing *City of Lincoln v. United States*, No. 16-1164, 2020 WL 5107613, at *3 (E.D. Cal. Aug. 31, 2020)). However, unlike the case the City relies upon, *Hobart Corp.*, 336 F. Supp. 3d at 895, the City has not been sued under section

107(a). Accordingly, because the City is not liable to any party under section 107(a), it cannot bring a contribution claim under section 113(f)(1).

The court grants the County's motion for judgment on the pleadings as to the City's claim for contribution under CERCLA section 113 without leave to amend, noting that at hearing, the City's counsel conceded dismissal of its CERCLA section 113 was appropriate.

## IV. CONCLUSION

For the above reasons, the **court grants the County's motion for judgment on the pleadings** with leave for the City to amend its equitable indemnity and equitable contribution claims. The court also **grants** the County's motion for judgment on the pleadings as to the City's claim for contribution under CERCLA section 113, without leave to amend.

The court **denies** the City's procedurally flawed request for leave to amend to add a claim under the California Hazardous Substances Account Act. The City may renew this request by filing the proper motion. *See* Fed. R. Civ. P. 7(b).

This order resolves ECF No. 46.

IT IS SO ORDERED.

DATED: September 14, 2022.

CHIEF UNITED STATES DISTRICT JUDGE